IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JESSICA BETH UNDERLAND-WILLIAMS<br><br>Plaintiff,<br><br>v.<br><br>GUTTERGUARD, LLC d/b/a GUTTERGUARDIAN, et. al.<br><br>Defendants. | No. 3:11-0832<br>JUDGE HAYNES |

## MEMORANDUM

Plaintiff, Jessica Beth Underwood-Williams, originally filed this action in Wilson County, Tennessee Circuit Court against Defendants GutterGuard, LLC d/b/a GutterGuardian, and Dixie Homecrafters, LLC d/b/a Gutter Guardian, Delaware limited liability companies with their principal places of business in Georgia. Plaintiff asserts claims for the Defendants' violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 et. seq.; sex discrimination under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401, et. seq.; and, retaliatory discharge and intentional infliction of emotional distress for outrageous conduct under Tennessee common law. The gravamen of Plaintiff's claim is that she was wrongfully discharged while on medical leave for complications with her pregnancy. Defendants removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, without objection.

Before the Court is Defendants' partial motion to dismiss (Docket Entry No. 18), contending, in sum: (1) that both the FMLA and the THRA preempt Plaintiff's common law retaliatory discharge claim; (2) that Tennessee's worker's compensation exclusivity doctrine bars

1

Plaintiff's outrageous conduct claim; and (3) that Plaintiff fails to state a plausible claim for outrageous conduct under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In response to Defendant's motion to dismiss (Docket Entry No. 21), Plaintiff contends, in sum: (1) that neither the FMLA nor the THRA preempts her common law retaliatory discharge claims; (2) that the worker's compensation exclusivity doctrine does not bar her outrageous conduct claim; and (3) Plaintiff has alleged sufficient facts to state a viable outrageous conduct claim.

### A. Analysis of the Complaint

Since June 17, 2008, Plaintiff was a full time assistant office manager with the Defendants. (Docket Entry No. 16, Amended Complaint at ¶ 9). Plaintiff was promoted to Office Manager in February, 2010. Id. at ¶ 19-20. Plaintiff learned of her pregnancy in June, 2010. Id. at ¶ 22. Plaintiff immediately informed Stacey Benson, her general manager, of her pregnancy. Id. at ¶ 16, 23. Plaintiff also advised Benson that he would need to hire another employee to assist Plaintiff, and permit Plaintiff to train the new employee to fulfill Plaintiff's duties while Plaintiff was on maternity leave. Id. at ¶ 23. In December, 2010, Jessica Abbott was hired as Assistant Office Manager. Id. at ¶ 25.

On January 21, 2011, Plaintiff, seven months pregnant at the time, slipped and fell on ice as she was leaving for work. Id. at ¶ 27, 31. Plaintiff informed Benson that she fell, and visited her physician for a medical screening. Id. at ¶32. According to Plaintiff, her physician admitted her to a hospital, determined that she was in pre-term labor due to her fall, and released her from the hospital on January 24, 2011. Id. at ¶¶ 34-37. Plaintiff's physician ordered bed rest until her child was born. Id. at ¶ 37.

On January 24, 2011, Plaintiff answered telephone calls from Abbott concerning work related matters. Id. at ¶ 40. Plaintiff then telephoned Benson and informed him that, given her physician's instructions, she could no longer respond to Abbott's telephone calls. Id. at ¶ 41. Plaintiff alleges that Benson became angry and accused her of purposefully abandoning her employment. Id. at ¶ 42. Plaintiff further alleges that Benson sent an individual to retrieve Plaintiff's office work phone and office keys. Id. at ¶ 43. On January 28, 2011, Plaintiff obtained a note from her physician prescribing bed rest until Plaintiff's baby was born. Id. at 48. Plaintiff executed and returned FMLA documents to Defendants sometime after she obtained the prescription note. Id. at ¶ 49.

On March 8, 2011, Dee Davis, Defendants' human resources representative, telephoned Plaintiff and terminated her employment, citing her job abandonment. Id. at ¶¶ 46, 55-56. Plaintiff alleges that during a subsequent unemployment benefits hearing, Defendants stated that Plaintiff's employment was terminated for either her job abandonment or resignation on January 21, 2010. Id. at ¶ 60. Plaintiff also alleges disparate treatment from male employees who took FMLA leave, but were not terminated. Id. at ¶¶ 62-68.

### B. Conclusions of Law

Upon a motion to dismiss, the Court must accept the complaint's factual allegations as true and construe the complaint liberally in favor of the plaintiffs. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir.

3

2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

Indeed, "it is not...proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated...laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement". Id. at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'". Id. at 557 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

> entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-1950.

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a complaint itself . . . [.]" Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971). Thus, "when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, 7 Fed.Appx. 336, 343, No. 99-4544, 2001 WL 223857 (6th Cir. Mar. 1, 2001). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Id. at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Id. (citations omitted).

### 1. FMLA Preemption

This Circuit has concluded that the FMLA preempts common law claims for retaliatory discharge. Compare Morris v. Family Dollar Stores of Ohio, 320 Fed.Appx. 330, 341 n.12 (6th Cir. Mar. 31, 2009) ("'[T]he statutory remedies in the FMLA adequately protect the public policy embedded in the [FMLA]'") (citations omitted) and Dorricott v. Fairhill Ctr. for Aging, 2 F.Supp.2d 982, 993 (N.D.Ohio 1998), aff'd on other grounds, 187 F.3d 635, No. 98-3671, 1999 WL 591453 (6th Cir. Jul. 27, 1999) ("[B]ecause [Plaintiff] has available a remedial scheme based on federal and state statutes governing retaliatory discharge…[Plaintiff's] claim for wrongful discharge…must fail.").

Based upon these Circuit authorities, the Court concludes that the FMLA preempts Plaintiff's common law claims for retaliatory discharge and should be dismissed.

## 2. THRA Preemption

Tennessee courts hold that the THRA also preempts Plaintiff's common law claim as the sole and exclusive remedy for retaliatory discharge.

> The issue presented is whether the whether the statutory remedy...is the sole and exclusive relief...Resolution of this matter necessitates an examination of the state of the law on retaliatory discharge at the time the statute was enacted. This is so because if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. However, where a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise, [as the legislature is presumed to know the state of the law at the time it enacts legislation].

Fonseca v. Golden Living Center-Mountainview, No. 4:09-cv-93, 2010 WL 3155984, at *9 (E.D.Tenn. Aug. 10, 2010) (citing England v. Fleetguard, Inc., 878 F.Supp. 1058, 1064-65 (M.D.Tenn. 1995) ("[T]he common-law tort of retaliatory discharge was created in 1984. The THRA was enacted in 1978. Therefore, the remedies embodied in [the THRA] are exclusive.")); Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 898-99 (Tenn. 1992); see also Guy v. Mut. of Omaha Ins. Co., 79 S.W.2d 528, 536 (Tenn. 2002) (holding that because the common law claim of retaliatory discharge predated Tennessee Whistleblower Act, and remedies in Whistleblower Act were not expressly exclusive, statutory remedies were cumulative).

Plaintiff cites Williams v. Greater Chattanooga Pub. Television Corp., --- S.W.2d ---, No. E2010-00771-COA-R3-CV, 2011 WL 1103145 (Tenn.Ct.App. Mar. 25, 2011) for the assertion that Tennessee state courts routinely permit common law and statutory claims for retaliatory discharge to be brought simultaneously. (Docket Entry No. 21 at 2). In Williams, the Tennessee Court of Appeals concluded that a genuine issue of material fact existed on whether Plaintiff "made a prima facie case of retaliatory discharge under either the common law or [state] statute." Williams v. Greater Chattanooga Pub. Television Corp., --- S.W.2d ---, No. E2010-00771-COA-R3-CV, 2011 WL 1103145, at *11 (Tenn.Ct.App. Mar. 25, 2011) (emphasis added). Yet, in a

diversity action, the Court must apply Tennessee law "in accordance with the then controlling decision of the highest state court." Walburn v. Lockheed Martin Util. Servs., Inc., No. 10-3419, 2011 WL 3677938, at *4 (6th Cir. Aug. 22, 2011) (citing Grantham and Mann Inc., v. Amer. Safety Prods., Inc., 831 F.2d 596, 608 (6th Cir. 1987)) (internal quotation marks omitted).

Thus, this Court concludes that the THRA preempts Plaintiff's common law retaliatory discharge claim, and this claim should be dismissed.

### 3. Outrageous Conduct

Under Tennessee law, for an outrageous conduct claim: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]" Medlin v. Allied Inv. Co., 398 S.W.2d 270, 275 (Tenn. 1966) (quoting Restatement (Second) of Torts § 46(1) cmt. h) (internal quotation marks omitted). Tennessee courts recognize that "liability for mental distress damages clearly 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" Bain, 936 S.W.2d at 622 (quoting Medlin, 398 S.W.2d at 274). The Tennessee Supreme Court has adopted the "high threshold standard" of the Restatement (Second) of Torts that states as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the

7

recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

Id. at 622-23 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); see also Medlin, 398 S.W.2d at 274.

"This is an extremely high standard for the plaintiff to meet." Jenkins v. Nashville Public Radio, No. 3:02CV0179, 2005 WL 3358871, at *4 (M.D. Tenn. Dec. 9, 2005) (footnote omitted). "[D]iscriminatory conduct does not automatically give rise to the imposition of liability for intentional infliction of emotional distress. If it did, virtually every action brought under [the federal Civil Rights Act and the THRA] would include an intentional infliction of emotional distress claim." Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003). Further, "'some degree of transient and trivial emotional distress is a part of the price of living among people.' Thus recovery for intentional infliction of emotional distress is limited to mental injury which is 'so severe that no reasonable [person] would be expected to endure it.'" Id. (quoting Miller v. Willbanks, 8 S.W.3d 607, 615 n.4 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).

Viewed in a light most favorable to the Plaintiff, the Court concludes that Defendants' alleged conduct is offensive and could cause Plaintiff's emotional distress. Yet, it is not outrageous under Tennessee law. Further, Plaintiff does not allege any facts in addition to her FMLA and THRA claims to support her outrageous conduct claim. "Alleging a violation of anti-discrimination laws, without additional evidence showing conduct so outrageous as not to be tolerated in civilized society, is simply insufficient to prove intentional infliction of emotional distress." Jenkins, 2005 WL 3358871, at *4. Accordingly, the Court concludes that Plaintiff's outrageous conduct claim should be dismissed for failure to state a claim under Tennessee law.

Accordingly, the Court concludes that Defendants' partial motion for dismissal (Docket Entry No. 18) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 9th day of December, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge